IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAY PETER ZUBER,

                Plaintiff,

v.                                                  OPINION and ORDER

MARTIN O'MALLEY,[1]                             22-cv-599-jdp
Commissioner of Social Security,

                Defendant.

---

Plaintiff Jay Zuber seeks judicial review of a final decision of defendant Martin O'Malley, Commissioner of Social Security, finding that Zuber was not disabled within the meaning of the Social Security Act. Zuber contends that the administrative law judge (ALJ) improperly evaluated his mental functioning. Specifically, Zuber argues that the ALJ provided faulty reasons for rejecting expert medical opinions that his mental impairments were more severe than the ALJ ultimately found. The court concludes that the ALJ missed key portions of the medical record when he evaluated Zuber's ability to interact with others. The ALJ's written decision is generally thorough and clear, but the errors may have changed the ALJ's ultimate determination of Zuber's disability status, so the court will remand the case for further proceedings.

---

[1] The court has updated the caption to reflect Martin O'Malley's confirmation as commissioner. *See* Fed. R. Civ. P. 25(d).

BACKGROUND

Jay Zuber applied for disability benefits in January 2020, alleging that he had been disabled since 2010 due to left-side hearing loss and numerous mental health conditions. R. 81.[2] Zuber subsequently amended the alleged onset date of his disability to June 2018 so it would not overlap with an application for disability benefits that the agency previously denied. R. 47, 412. After a local disability agency denied his claim initially and on reconsideration, Zuber requested an administrative hearing. Three online video hearings were held on November 16, 2021, December 13, 2021, and March 30, 2022, before ALJ Micah Farris, although technical errors during the second hearing resulted in the loss of the record from that hearing.

In an April 2022 decision, the ALJ found that Zuber was not disabled. R. 14–35. The ALJ found that Zuber suffered from six severe impairments: left-side hearing loss, major depressive disorder, generalized anxiety disorder, social anxiety disorder, panic disorder, and posttraumatic stress disorder. R. 16. Regarding Zuber's mental impairments, the ALJ found that he had mild limitations in understanding, remembering, or applying information, and moderate limitations in interacting with others, concentrating, persisting, and maintaining pace, and adapting and managing himself. R. 21–22. Because Zuber's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation in mental functioning, the ALJ found that he did not meet the requirements of any listed disability. R. 23.

The ALJ determined that Zuber had the residual functional capacity (RFC) to perform a full range of work at all exertional levels with some non-exertional limitations:

---

[2] Record cites are to the administrative transcript located at Dkt. 10.

> The individual may not work in an environment where the noise level is greater than "moderate" as that term is defined in the Dictionary of Occupational Titles (DOT) and the Selected Characteristics of Occupations (SCO). The individual is limited to simple, routine, repetitive tasks at a nonproduction pace, and may have occasional superficial contact with supervisors and coworkers, and no contact with the public. By superficial, I mean rated no lower than an 8 on the SCO people rating.

R. 25. Based on testimony from a vocational expert, the ALJ concluded that Zuber could not perform any of his past relevant work, but that he could perform other jobs available in significant numbers in the national economy, including as a counter supply worker, a routing clerk, or a hospital cleaner. R. 33–34. The Appeals Council denied Zuber's request for review, so the ALJ's decision became the final decision of the commissioner. R. 1.

Zuber now appeals to this court. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

## ANALYSIS

Zuber challenges the ALJ's application of the "special technique" for evaluating mental impairments. 20 C.F.R. § 404.1520a. The special technique is used at steps two and three of the sequential evaluation process to determine whether a claimant has a medically determinable mental impairment and whether that mental impairment causes functional limitations. *Id.*; *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008). The special technique

3

instructs the ALJ to rank on a five-point scale (none, mild, moderate, marked, or extreme) the degree to which the claimant's mental impairments limit his functioning within four broad categories: understanding, remembering, or applying information, interacting with others, concentrating, persisting, and maintaining pace, and adapting and managing oneself. *Id.* § 404.1520a(c)(3)–(c)(4). If the ALJ ranks the claimant's limitations as "marked" in two categories, or as "extreme" in one category, then the claimant satisfies the criteria for a presumptive finding of disability. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.

Zuber contends that the ALJ erred in finding that he had only mild or moderate limitations in each of the four categories of mental functioning. In response, the commissioner asserts that the ALJ properly evaluated the medical evidence related to Zuber's mental functioning, and alternatively, that any error was harmless.

A. **Medical evidence**

The problems that Zuber identifies with the ALJ's ranking of his mental functioning all relate to how the ALJ evaluated the expert medical opinions in the record. Zuber contends that the ALJ improperly fixated on certain portions of the expert opinions and discounted other portions without adequate explanation.

Agency regulations require ALJs to explain "how persuasive [they] find all of the medical opinions" in the record. 20 C.F.R. § 404.1520c(b). ALJs must consider several factors in making this determination, the most important of which are supportability of the medical opinion and consistency of the opinion with other sources in the record. *Id.* § 404.1520c(c). On review, the court may not second-guess the ALJ's evaluation of the medical opinions if the evaluation is logically explained and supported by substantial evidence. But the court must remand if the ALJ's evaluation is not supported by substantial evidence, including if the ALJ

4

"selectively discuss[es] portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018) (quoting *Campbell v. Astrue*, 627 F.3d 299, 301 (7th Cir. 2010)).

The court concludes that the ALJ adequately explained how he evaluated the expert medical opinions for first three areas of mental functioning: memory, concentration, and ability to adapt and manage himself. But the ALJ erred in explaining how he evaluated the medical opinions for Zuber's ability to interact with others. Specifically, the ALJ rejected medical opinions that Zuber had severe difficulties with social interaction and provided reasons for doing so that were based on an incomplete or inaccurate characterization of the medical record.

### 1. Memory, concentration, and adaptation

In the first three areas of mental functioning, the ALJ determined that Zuber had mild limitations in understanding, remembering, and applying information, moderate limitations in concentrating, persisting, and maintaining pace, and moderate limitations in adapting and managing himself. The ALJ evaluated medical opinions from Zuber's treating psychologist, Kari Marks, from consultative psychologist Marcus Desmonde, and from two non-examining agency consultants.

Marks opined that Zuber had severe limitations in all three functional areas, but the ALJ found her opinion largely unpersuasive in light of Zuber's medical history and Marks's own treatment records. The ALJ identified the following problems with Marks's opinion:

- Marks said that Zuber had "ongoing concentration and memory deficits," but those deficits were not "specifically described" and Marks never addressed memory deficits in therapy or referred Zuber to occupational therapy to address memory issues.

- Marks said that Zuber had severe difficulties with concentration, but Zuber was able to focus during his one-hour therapy sessions with her.

5

- Marks said that Zuber had severe difficulties in adapting and managing himself, but treatment records show no remarkable mental status findings and no intensive therapy or other treatment addressing these issues.

Zuber contends that the ALJ conducted impermissible medical analysis because the reasons he gave for rejecting Marks's opinion were based on arbitrary medical criteria or the ALJ's lay opinion of what Marks should have been covering with Zuber in therapy.

The court disagrees. The ALJ evaluated Marks's opinion in the context of the medical record, as he was required to do under agency regulations. The regulations require the ALJ to consider the supportability and consistency of the medical opinions in the record, including whether the medical source provided "supporting explanations" for her opinion, whether the treatment the claimant received aligned with the alleged symptoms, and whether the medical opinion is consistent with observations of how the claimant functioned during examinations or therapy. 20 C.F.R. § 416.920c(c)(1); *Id.* § 416.929(c)(3); *Id.* Part 404, Subpart P, Appendix 1 12.00(C)(2)(j) (2023). Here, the ALJ found Marks's opinion of Zuber's mental functioning unpersuasive because Marks didn't adequately explain her opinion and because her opinion was unsupported by Zuber's treatment records and by Marks's own observations of how Zuber functioned during therapy. These are logical reasons to reject Marks's opinion supported by evidence in the record, so the court cannot second guess the ALJ's conclusion.

2. **Interacting with others**

In the last area of mental functioning, the ALJ found that Zuber had no more than moderate difficulties interacting with others. In reaching this conclusion, the ALJ largely rejected the medical opinions of both Marks and Desmonde, who said that Zuber had marked to extreme limitations in interacting with others and that those limitations would substantially interfere with his ability to maintain a regular work schedule and function properly at work.

R. 461, 473–74. The ALJ gave the following reasons for rejecting Marks' and Desmonde's opinions:

- Medical records from 2008–2010 don't show any difficulties interacting with others.

- Zuber received only inconsistent and conservative therapy, and his therapy records don't focus on his issues leaving the home and interacting with others.

- Marks noted that Zuber doesn't have difficulty interacting with her.

- Desmonde noted that Zuber avoided crowds, but that he used public transportation and did his own shopping late at night.

- Therapy records discuss a relationship between Zuber and a "female friend," which is inconsistent with the medical expert opinions regarding the extent of his difficulties interacting with others.

The court concludes that the first three reasons are unsupported by substantial evidence. As for the old medical records, the ALJ reasoned that the records from 2008–2010 were probative of Zuber's disability status in 2018 because some of Zuber's mental health conditions purportedly arose from a concussion during his youth and a dog bite that occurred in 2003, so one would expect him to have symptoms going back to those incidents. But this explanation is an impermissible lay interpretation of the medical evidence. *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). The ALJ identifies no expert medical opinions in the record that support his assumption that an individual with impairments from a concussion and PTSD should show consistent symptoms over more than a decade.

As for Zuber's therapy records, an ALJ may consider whether a claimant has received only conservative treatment. *See* 20 C.F.R. § 404.1529(c)(3). But the ALJ must also consider why the claimant may have received only conservative treatment, including whether the claimant's mental illness "may [have] prevent[ed] the sufferer from taking [his] prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th

7

Cir. 2006). In this case, the ALJ ignored several facts in the record that may have explained Zuber's inconsistent therapy record. Marks noted that Zuber's anxiety and avoidant behaviors may have prevented him from seeking counseling. R. 469 ("Jay admits that seeking counseling has been anxiety-provoking for him on many levels."); R. 480–81 ("Jay's most significant PTSD symptoms include the active avoidance of many social situations . . . Jay's debilitating fear of leaving home and particularly of public places is evidence of his PTSD and social anxiety disorder."). And the record shows that Zuber actively structured his life to manage his anxiety about interacting with others: he sometimes went weeks without leaving his home, saw only one medical provider, and went out shopping only when accompanied by his brother or late at night to avoid people. R. 469, 541. Agency regulations instruct ALJs to consider this type of non-medical symptom management when evaluating the severity of a claimant's impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 12.00(D)(1) (2023). But the ALJ did not address whether Zuber's efforts to structure his life to avoid difficult social situations might explain why his therapy records contain little discussion of his difficulties with social interaction.

As for Zuber's ability to interact with Marks, the ALJ stated that Marks "did not indicate that the claimant had any specific difficulties interacting with her, and described him as cooperative, responsive, focused, and actively engaged." R. 22. This is an inaccurate description of the record. Marks said that she had built "rapport and trust" with Zuber over the years, which had led "some of his nervousness and fear of sharing his thoughts" to subside. R. 482. But Marks also said that Zuber "tends to cover his head and eyes" with his hat or a hoodie during sessions, "often appears depressed and anxious," and "makes inconsistent eye contact." R. 482, 491. All of these are difficulties interacting, but the ALJ seemingly discounted

8

them because "Marks never asked [Zuber] to remove the hoodie." R. 22 (The ALJ doesn't explain why that matters.)

The ALJ also ignored that other medical experts identified the same difficulties with social interaction. R. 456 (Dr. Neil Johnson) ("The patient has flat affect. He has poor eye contact."); R. 540 (Desmonde) ("the hoods were up and he was somewhat shielded by these head coverings . . . initial responses showed virtually no eye contact and tended to be monosyllabic without much elaboration"). The medical evidence does not support the ALJ's finding that Zuber did not have difficulties interacting with his treatment providers.

Zuber does not challenge the ALJ's other two reasons for rejecting Marks's and Desmonde's opinions about his ability to interact with others: that Zuber was able to use public transportation and to go shopping late at night, and that Zuber's therapy records document a relationship with a "female friend." If these reasons overwhelmingly supported the ALJ's evaluation of Zuber's ability to interact with others, then there would be no reason to remand because the ALJ would reach the same conclusion even without the error. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). But in this case, it is far from clear that the ALJ would reach the same conclusion had he properly evaluated the medical evidence. Marks and Desmonde both opined that Zuber had severe difficulties with social interaction to the point of rarely leaving his home. If the ALJ had found those opinions more persuasive, he may have changed Zuber's RFC in a way that would have resulted in a finding of disability. On remand, the ALJ should analyze all the medical opinions related to Zuber's ability to interact with others, without ignoring or mischaracterizing evidence that supports a finding of disability. The ALJ must also revisit Zuber's mental RFC based on the evidence in the record.

**B. Harmless error**

Zuber challenges the ALJ's decision on only one basis: whether the ALJ erred in ranking his limitations in the four broad areas of mental functioning. The ALJ's ranking of the four broad areas of mental functioning is used to determine whether a claimant has severe mental impairments and whether those impairments meet the requirements for a presumptive disability. *Pepper v. Colvin*, 712 F.3d 351, 365 (7th Cir. 2013). Receiving a certain ranking doesn't entitle a claimant to a specific work limitation. *See Jozefyk v. Berryhill*, 923 F.3d 492, 497–98 (7th Cir. 2019); *see also Biafora v. O'Malley*, No. 22-cv-469-jdp, 2024 WL 1327358, *3 (W.D. Wis. Mar. 28, 2024). The commissioner asserts that any error in ranking was harmless, because Zuber doesn't contend that he was entitled to a presumptive finding of disability, nor does he identify any specific work limitation that the ALJ failed to include in his RFC.

It would have been helpful for Zuber to explain how the ALJ's faulty ranking of his mental functioning affected either the determination of presumptive disability, or the specific limitations that the ALJ included in his RFC. But Zuber's failure to spell this out doesn't mean that the errors he identifies were harmless. A failure to properly rank a claimant's limitations in the broad areas of mental functioning is harmless if the ALJ otherwise properly evaluated the medical evidence, such that it is clear that the ALJ would reach the same result on remand. *Pepper*, 712 F.3d at 366. But as explained above, it is not clear that the ALJ would have made the same determination about Zuber's disability status had he properly evaluated the medical evidence about Zuber's ability to interact with others. The ALJ's error was not harmless.

ORDER

IT IS ORDERED that that the decision denying disability benefits to plaintiff Jay Zuber is REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered September 20, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge